UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SANDY STAHLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:10-CV-439 |
| | ) |
| AMALGAMATED TRANSIT UNION, | ) |
| LOCAL 996, AND AMALGAMATED | ) |
| TRANSIT UNION, AFL-CIO, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Sandy Stahly claims that she was the victim of race and sex discrimination while she was a bus driver for the South Bend Public Transportation Corporation ("TRANSPO") in South Bend, Indiana, and a member of Amalgamated Transit Union Local 996. Her Amended Complaint does not seek relief from TRANSPO; instead, she seeks recovery only from the Local and from Amalgamated Transit Union, AFL-CIO ("the International"). The defendants seek dismissal of the case, [DE 19], and for the following reasons, their motion is GRANTED in part and DENIED in part.

## BACKGROUND

Stahly was a bus driver for TRANSPO in South Bend, Indiana from June 1998 until TRANSPO terminated her employment on August 25, 2009 [DE 17 at ¶ 9]. Stahly was a member of Amalgamated Transit Union Local 996, which represented TRANSPO employees [*Id.* at ¶ 5, 10-11]. Stahly claims that both TRANSPO, the Local and the International all discriminated against her because she is a woman and because she is white [*Id.* at ¶ 4, 12]. In particular, Stahly alleges that the Local and the International caused or attempted to cause

TRANSPO to discriminate against her, acquiesced in or facilitated TRANSPO's discrimination, retaliated against Stahly because of her complaints of discrimination, failed to represent her or assist her with her grievance against TRANSPO, created a hostile work environment, and favored African Americans in connection with her claims of race discrimination [*Id.* at ¶ 12, 18-20].

Following her termination, Stahly filed a claim with the Equal Employment Opportunity Commission against "Amalgamated Transit Union" located in South Bend, Indiana [*Id.* at ¶ 2; DE 20, Exh. 1], and the EEOC subsequently issued a right-to-sue letter on July 23, 2010 [DE 17 at ¶ 2; DE 20, Exh. 2]. Thereafter, Stahly filed this lawsuit and then amended her complaint, and it is that amended complaint that is the subject of the motion to dismiss presently before the court.

Stahly's Amended Complaint has four counts: Count I is for racial discrimination under 42 U.S.C. § 1981; Count II is for race and sex discrimination under Title VII of the Civil Rights Act; Count III is for violation of Section 301 of the Labor Management Relations Act; and Count IV is a breach of contract claim under Indiana state law. Stahly alleges that she was a bus driver for TRANSPO in South Bend, that she was fired as the result of reverse discrimination, and that the Defendants participated in the discrimination, then refused to assist her in the grievance process against TRANSPO, created a racially hostile work environment, and retaliated against her because of her complaints [DE 17 at 2-4].

## **DISCUSSION**

The minimum requirements for pleading a claim for relief are contained in Federal Rule of Civil Procedure 8. That rule requires "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Meanwhile, Rule 12(b)(6) provides for the dismissal of claims that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The Supreme Court has retooled its interpretation of the pleading standards in recent years, beginning with its opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In the context of a motion to dismiss for failure to state a claim, the Court stated that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id*. at 555 (quotation marks and brackets omitted). The Court later readdressed the *Bell Atlantic* decision and stated: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). However, "[a] plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (internal citation and quotation marks omitted). Although at this stage I still must accept all allegations as true and draw all reasonable inferences in the Stahly's favor, I don't need to accept threadbare legal conclusions supported only by conclusory statements. *Iqbal*, 129 S. Ct. At 1949.

**I.      Count IV is Preempted by the LMRA.**

As an initial matter, the Defendants argue, and Stahly concedes, that Count IV of the Amended Complaint, which alleges a state breach of contract claim, is preempted by the Labor Management Relations Act [DE 20 at 10-11; DE 23 at 4]. Section 301 of the LMRA preempts state law claims that involve alleged breaches of a collective bargaining agreement. *In re Bentz*

3

*Metal Products Co. Inc.*, 253 F.3d 283, 286 (7th Cir. 2001). The reason for this is to avoid inconsistent interpretations of collective bargaining agreements. *Nelson v. Stewart*, 422 F.3d 463, 468 (7th Cir. 2005). To allow state breach of contract actions for alleged violations of CBAs could frustrate the Congressional goal of providing an orderly and consistent handling of labor disputes. *Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 404, n.3 (1988).

It is clear – and the parties agree – that Stahly's Count IV is preempted by the LMRA. The Amended Complaint states that the "breach of the [collective bargaining] agreement caused the termination of Plaintiff on August 25, 2009" [DE 17 at ¶ 23]. This allegation is a direct challenge to the CBA. *See id.; Caterpillar Inc. v. Williams*, 482 U.S. 386, 394-95 (1987) ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement") (internal quotations omitted). At a minimum, this claim requires analysis and interpretation of the CBA, preempting the state breach of contract claim. The Defendants' motion to dismiss Count IV is therefore GRANTED.

## II. Count III is Either Time-Barred or Impermissibly Vague.

In Count III of the Amended Complaint, Stahly claims that the Defendants violated the Labor Management Relations Act by breaching the Collective Bargaining Agreement between the union and TRANSPO [DE 17 at ¶ 22]. The Defendants move to dismiss Count III as barred by the statute of limitations [DE 19 at ¶ 4; DE 20 at 9-10]. The Defendants argue that Stahly's complaint states a claim for a "hybrid" Section 301 action, and that the statute of limitations for such claims is six months, putting Stahly's complaint, which was originally filed in October 2010, over a year after she was fired from TRANSPO, well outside the limitations period [DE 20

4

at 9-10]. Stahly responds that the appropriate statute of limitations for such a case is actually two years, and that her claim should survive because it was filed within that two year period [DE 23 at 4].

Pursuant to 29 U.S.C. § 185 (also referred to as Section 301 of the LMRA), and the Supreme Court's decision in *Vaca v. Sipes*, 386 U.S. 171 (1967), "a union owes a fiduciary duty to represent its members fairly; and when the union fails in that obligation and mishandles a member's grievance against his employer, the aggrieved union member is entitled to seek relief in federal court." *Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 804 (7th Cir. 2008). These cases are called "hybrids" because they essentially assert both a claim against the employer for breach of a collective bargaining agreement under § 301 and a claim against the union for breach of its duty to fairly represent the union member. *Id*. In other words, there are two key components to the case: (1) the employer has done something the union member feels is wrong; and (2) the union has improperly handled the employee's grievance. "In order for a plaintiff to prevail in such an action, [s]he must have a meritorious claim against both the union and the employer; the claims are interlocking in the sense that neither is viable if the other fails." *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003). Furthermore, "[a] union breaches the duty of fair representation only if its actions are arbitrary, discriminatory, or in bad faith." *Id*. at 369.

Here, as the Court understands Stahly's Amended Complaint, she is in fact stating a hybrid Section 301 claim. Stahly's claim is somewhat unorthodox in that she is suing only the union and not her employer, but that is her prerogative: "The employee may, if [s]he chooses, sue one defendant and not the other; but the case [s]he must prove is the same whether [s]he sues

5

one, the other, or both." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983). Stahly has claimed that TRANSPO improperly terminated her, and that the union failed to properly represent her in connection with her termination [DE 17 at ¶¶ 12, 17-20, 22]. This is exactly the basis of a hybrid Section 301 claim.

It is well-settled that the statute of limitations in a hybrid Section 301 case is six months. *DelCostello*, 462 U.S. at 169, *Jones v. Gen. Electric Co.,* 87 F.3d 209, 211-12 (7th Cir. 1996). In her response to the Defendants' Motion to Dismiss, Stahly presses that the appropriate statute of limitations in this case is two years, relying on *International Union of Elevator Constructors v. The Home Elevator Co., Inc.*, 798 F.2d 222 (7th Cir. 1986) [DE 23 at 4]. However, *Home Elevator* concerned a Section 301 suit brought by a *union* against an *employer*, and was not a hybrid case – and the Seventh Circuit made note of that distinction when it declined to follow *DelCostello* and applied a two-year statute of limitations. *See Home Elevator*, 798 F.2d at 225-27.

Here, it is clear that the six month statute of limitations applies, and that Stahly's complaint was filed outside of it. Although a statute of limitations defense is not generally part of a motion to dismiss pursuant to Rule 12(b)(6), it is appropriate where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (internal quotation omitted). A Section 301 "cause of action accrues from the time a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance."

*Chapple v. Nat'l. Starch & Chem. Co. and Oil*, 178 F.3d 501, 505 (7th Cir. 1999). Here, Stahly's Amended Complaint alleges that she was terminated on August 25, 2009. Her October 2010 filing was over a year after her termination, well beyond the six month statute of limitations. Even taking into account her allegations that the Defendants failed to represent her in her grievance regarding her termination – meaning that she is alleging that the union harmed her for some period of time *after* August 25, 2009 date – it is clear that at a minimum, Stahly knew that no further action would be taken on her grievance by October 2009, an accrual date by which her complaint would still have been far outside of the limitations period. Her claim, as stated, is outside of the limitations period. Because Count III is time barred, the Defendants' motion to dismiss Count III is GRANTED.

What is more difficult to understand is Stahly's allegation, in Count III of the amended complaint, that "Defendants breached the collective bargaining agreement between the Defendants and TRANSPO" and that "[t]his breach of the agreement caused the termination of Plaintiff on August 25, 2009" [DE 17 at ¶¶ 22-23]. It is unclear from the Amended Complaint if perhaps Stahly is attempting to proceed on a theory whereby the Defendants themselves caused her to be fired. If that is, in fact, the basis of Count III of the Amended Complaint, it fails to state a claim upon which relief can be granted, because it does not apprise the Defendants of the basis for the claim and the grounds upon which it rests. *Tamayo*, 526 F.3d at 1083. In any event, any such claim would be subsumed into Counts I and II of the amended complaint which I address next.

**III.   Counts I and II.**

Counts I and II of the Amended Complaint are brought against both the International and

the Local and are based on 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, respectively. Courts analyze Title VII and Section 1981 claims together because they require the plaintiff to prove the same *prima facie* elements. *Hobbs v. City of Chicago*, 573 F.3d 454, 460, n.1 (7th Cir. 2009). Even after *Bell Atlantic*, the Seventh Circuit has noted that there is a "minimal pleading standard for simple claims of race or sex discrimination." *Tamayo,* 526 F.3d at 1084 (*citing EEOC v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 781-82 (7th Cir. 2007)). To avoid dismissal under Rule 12(b)(6), "a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Id.*

### A. Section 1981 Claim

The requirements of a Section 1981 claim are that the defendant intended to discriminate against the plaintiff on the basis of race, and that the discrimination concerned an activity enumerated in the statute. *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311-12 (7th Cir. 1996). A Section 1981 claim demands that "the plaintiff must allege some facts that demonstrate that his race was the reason for the defendant's action." *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982). So to survive a motion to dismiss, a plaintiff's complaint must assert that the defendants were purposefully discriminatory with respect to the plaintiff's right to make and enforce contracts, and that the discrimination was racially motivated. *Rivera v. AuthorHouse*, No. 3:07-CV-268, 2008 WL 131046, at *6 (N.D. Ind. Jan. 10, 2008). Plaintiffs may bring suit against individuals who personally participated in the alleged violation of Section 1981. *See Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985). And relevant to this case, a viable Section 1981 claim may be brought against a union provided the CBA contains a

8

clause binding both the employer and the union not to discriminate on racial grounds. *Majeske,* 94 F.3d at 312. As far as we can tell, the CBA in this contains such a clause.

### 1. The International

The International asserts that Stahly's Amended Complaint provides no basis for holding the International liable to her under 42 U.S.C. § 1981, and I agree. Stahly alleges that on August 25, 1999, she was terminated from TRANSPO as a result of racial discrimination by the Defendants [DE 17 at ¶¶ 9, 12]. Stahly alleges that the Defendants represented TRANSPO employees "with regard to contracts of employment between TRANSPO and its employees," and that the Defendants "engaged in race discrimination against Plaintiff" [DE 17 at ¶12]. Stahly then alleged the manner in which she was discriminated against [*Id.*].

But none of the allegations involve the International directly. Rather, statements relating to the International's involvement in the breach are conclusory. Her only specific allegations about the International's involvement are that the International is "the parent of Defendant Transit Union, Local 996;" that the Local was "the agent of Defendant Amalgamated Transit Union, AFL-CIO;" and that the Local "acted as an agent for Defendant Amalgamated Transit Union, AFL-CIO" [DE 17 at ¶¶ 6, 7, 13]. This is conclusory and insufficient to state a claim under Section 1981.

Stahly's response states that the tie between the International and the Local should permit an action against the International by reiterating that she alleged in her complaint that the Defendant Local 996 was the agent for Defendant International [DE 23 at 5-6]. Stahly essentially argues that the International is vicariously liable for the Local's actions. However, the International cannot be vicariously liable for the Local's actions unless there is an agency

relationship between the International and the Local.

An agency relationship results from "the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the others to so act." *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 392 (1982); *see also Coronado Coal Co. v. United Mine Workers of America*, 268 U.S. 295, 304-05 (1925) (principal-agent relationship cannot be inferred solely from the affiliation between an international and local union). The Defendants note that the Amended Complaint contains no allegations of actions or omissions by the International, and makes only the conclusory assertion that the Local was the agent of the International [DE 30 at 3]. The Defendants also argue that even if the International had some authority to supervise the Local's affairs, that is still insufficient to establish the kind of agency relationship that would be necessary to hold the International liable for the Local's actions [DE 20 at 4-5].

Stahly provides no factual allegations whatsoever that the International has an agency or employment relationship with the Local. The allegations in Stahly's Amended Complaint that the Local was the "agent" of the International and that the International was the "parent" of the Local are conclusory, and Stahly does not allege any additional facts supporting those conclusions. Without any such facts, Stahly's complaint is insufficient to satisfy *Iqbal's* requirement that the claim be "plausible" [DE 20 at 5]. Stahly's failure to provide any factual detail regarding her allegations of agency doom her Section 1981 claim against the International. Without alleging any specific facts that indicate that the International knew about or participated in the alleged discrimination in the enforcement of a contract, Stahly has not satisfied the pleading standard for 42 U.S.C. §1981, and the International's motion to dismiss Count I is

GRANTED.

    2.    **The Local**

However, the Section 1981 claim against the Local stands on different footing. The Amended Complaint alleges that Stahly's employer, TRANSPO, and her union, Local 996, discriminated against her on the basis of her race as a Caucasian, which violated her ability to enforce the CBA that governed the employment relationship between TRANSPO and Local 996 [DE 17 at ¶ 11, 12]. The Local argues that Stahly has alleged only "labels and conclusions" and "threadbare recitals" that have failed to provide a "story that holds together" [DE 20 at 11-12; DE 24 at 6-7]. However, Stahly need only give "enough detail to give the defendant[s] fair notice of what the claim is and the grounds upon which it rests," and show through her allegations that "it is plausible, rather than merely speculative, that [s]he is entitled to relief." *Tamayo,* 526 F.3d at 1083. In other words, all that Stahly is required to plead at this point is that the defendant was purposefully discriminatory with respect to her right to make and enforce contracts, and that the discrimination was racially motivated. *See, e.g., Rivera,* 2008 WL 131046, at *6.

Stahly has done so here. She has properly alleged that Local Union 996 engaged in racial discrimination that interfered with her right to enforce the CBA by refusing to assist her with her grievances against her employer, both before and after her termination in August 2009; favoring African Americans over her in connection with her discrimination claims against TRANSPO; creating a racially hostile work environment through the actions of union representatives; retaliating against her for her complaints of discrimination; acquiescing in and facilitating TRANSPO's racial discrimination; and causing TRANSPO's racial discrimination against her [DE 17 at ¶ 12]. She has alleged that these actions were intentional [*Id.* at ¶ 14]. Stahly need not

lay out a comprehensive overview of detailed facts as to how the Local discriminated against her, *see Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir. 1998); *Tamayo*, 526 F.3d at 1084, and at this stage of litigation, Stahly has properly notified the Local as to the basis of her claim against them. Stahly has properly articulated a claim under Section 1981, and therefore the Local's motion to dismiss Count I is DENIED.

### B. Title VII

The Defendants also seek to dismiss Stahly's Title VII claim on the basis that Stahly failed to exhaust her administrative remedies and that the claim lacks sufficient factual allegations [DE 19 at ¶¶ 2, 6]. Title VII prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. So to survive a motion to dismiss on the basis of gender or race discrimination, the plaintiff must allege that the defendant instituted an adverse employment action against her on the basis of her sex or race. *Joren v. Napolitano*, 633 F.3d 1144, 1146 (7th Cir. 2011).

#### 1. The International

The International argues that Stahly failed to exhaust her administrative remedies by failing to file an EEOC charge against the International (as she did against the Local), barring her Title VII claim against the International [DE 20 at 5-6].

Prior to bringing a Title VII claim, plaintiffs first must file a charge with the EEOC describing the facts and circumstances constituting the alleged discriminatory conduct within the time the statute permits. *Conner v. Illinois Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005). Then, the EEOC must issue the plaintiff a right-to-sue letter. *Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999).

The general rule is that parties that are not named as respondents in an EEOC charge cannot be sued under Title VII. *Tamayo*, 526 F.3d at 1089. But this requirement is not jurisdictional, and it is subject to defenses such as waiver and estoppel. *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989).

An exception to this rule arises "where an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905-06 (7th Cir. 1981). But the opportunity to participate is necessary, and even in instances where parent corporations are not named while subsidiaries are named, the parent corporation must have the opportunity to participate in the EEOC proceeding. *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 604 (7th Cir. 2001).

The Seventh Circuit considers a four prong test to determine whether a plaintiff can be excused for the failure to name a defendant in an EEOC charge. *Eggleston*, 657 F.2d at 905-06. The factors, which are considered independently, are: (1) whether the role of the unnamed party is ascertainable at the time of the EEOC filing; (2) whether the interests of the named party are so similar to that of the unnamed party that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceeding; (3) whether absence from the EEOC proceedings resulted in actual prejudice to the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *Id.* at 908.

The Defendants point out that Stahly did not file an EEOC charge or receive a right to sue letter against the International, and Stahly admits that she did not include the International as

a party in her EEOC charge [DE 20 at 5-7; DE 23 at 5]. And because the International was not included in the EEOC charge, it didn't receive notice through a right to sue letter [DE 20 at 5-7, Exhs. 1, 2]. Stahly argues that International representatives were aware of the violations by virtue of the fact that the EEOC charge names the "Amalgamated Transit Union" as the party who the charge is asserted against, but provides no explanation as to how the International would possibly have received any notice, given that the charge clearly identifies "Local 966 [sic]" in South Bend, Indiana in the address section. The charge was sent to the HR Manager of "Amalgamated Transit Union Local No. 966 [sic]" in South Bend. Despite Stahly's assertion to the contrary, the EEOC charge does not identify any way that the International would have been provided with notice of the charge. Stahly does not allege facts that show the International knew about the EEOC claim or had an opportunity to participate [DE 140 at 11]. The International did not have adequate notice of the EEOC charge, so the notice exception to the rule requiring an EEOC charge and right-to-sue letter does not apply. The Title VII claim against the International is therefore dismissed for failure to exhaust administrative remedies.[1]

2. **The Local**

As with the Section 1981 claim in Count I, the Local argues that the Title VII claim in Count II should be dismissed because it states only conclusory allegations that do not raise a plausible right to relief and fails to satisfy the pleading standards as set out in *Bell Atlantic* and *Iqbal* [DE 20 at 12]. But as with Count I, Stahly's complaint adequately states a claim for relief. A plaintiff alleging a violation of Title VII need only state her claim "quite generally," and "once

---

[1] Additionally, for the reasons discussed above in the section addressing the Section 1981 claim against the International, Count II of the amended complaint must also be dismissed against the International for failure to state a claim under Rule 12(b)(6).

a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim." *Tamayo*, 526 F.3d at 1084 (quoting *Concentra,* 496 F.3d at 781-82). Moreover, "conclusory statements are not barred entirely from federal pleadings." *Id.* at 1084.

Stahly's complaint needed only to allege that she was the victim of an adverse employment action on the basis of her sex and race. *See id*. She has done exactly that by alleging that she is a female [DE 17 at ¶ 4], that she is white [*id.*], and that the Local participated in, acquiesced to, facilitated, or caused TRANSPO's racial discrimination, resulting in her termination [*Id.* at ¶ 17-19]. Stahly also alleges that the Local retaliated against her because she complained about TRANSPO's race and sex discrimination [*Id.* at ¶ 20]. These allegations are enough to cross the threshold from speculative to plausible. *Tamayo*, 526 F.3d at 1083. The Local's motion to dismiss Count II is DENIED.

## CONCLUSION

For the reasons stated above, the Motion to Dismiss is GRANTED in part and DENIED in part.

**SO ORDERED**.

ENTERED: January 27, 2012

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
